**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| **RICHARD HERSHEY,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:20-CV-04239-MDH** |
| | ) | |
| **THE CURATORS OF THE UNIVERSITY** | ) | |
| **OF MISSOURI, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

Before the Court is Defendants' motion to dismiss Plaintiff's Second Amended Complaint (Doc. 69). All defendants move the Court to dismiss the above-captioned case pursuant to 12(b)(6). For the reasons set forth herein, the motion is **GRANTED IN PART and DENIED IN PART**.

## INTRODUCTION

Plaintiff brings claims against a variety of individuals related to several incidents on campuses of the University of Missouri ("University"). Plaintiff often handed out flyers and brochures, and he advocated for vegetarian or vegan eating. Plaintiff claims that the University's policy that placing regulations on speech on areas of campus is unconstitutional. More specifically, he claims that Defendants applied the policy, CRR 110.010, unconstitutionally against him and infringed on his First Amendment rights by restricting his speech based on content.

Plaintiff alleges that, in December of 2021, he was distributing literature at the University of Missouri-Columbia (MU) and was asked by a Jane Doe who identified herself as "with operations" to relocate to another location on campus. Doc. No. 65 ¶ 23. Plaintiff claims that Ms. Doe called University police after Plaintiff "declined to remove himself from his desired location." *Id*. ¶ 24. Plaintiff asserts that he spoke with a MU police officer for "approximately ten minutes,"

1

who purportedly told Plaintiff he would be removed from campus if he made students feel uncomfortable or if he was otherwise rude. *Id*. ¶¶ 24, 25. He claims that "the University's actions interfered" with his protected speech activities and that the officer's presence "deterred some students from accepting a booklet from Hershey." *Id*. ¶¶ 27, 28.

Plaintiff next alleges that, on August 23, 2021, he was distributing literature regarding vegetarianism on the University of Missouri-St. Louis (UMSL) campus. *Id*. ¶ 29. Plaintiff alleges that UMSL staff "demanded that he distance himself farther from his intended audience outside the [Millenium Student Center]." *Id*. ¶ 32. Plaintiff names as a defendant Dorian Hall ("Hall"), the Director of the Millenium Student Center, and claims that Director Hall "directed his staff to move Hershey farther away from the door." *Id*. ¶ 33. Plaintiff alleges that "UMSL's actions interfered with Hershey's lawful and protected speech activities" and that the "staff's presence" deterred students from accepting Hershey's literature." *Id*. ¶¶ 36, 37.

Plaintiff next asserts that, on May 7, 2021, he was distributing literature on the Missouri University of Science and Technology (Missouri S&T) campus when he was approached by Sergeant Mark Ritter ("Ritter") and told he "had to leave the University." *Id*. ¶¶ 38, 41, and 54. Plaintiff claims that Ritter "looked at the booklet for several seconds" and "arbitrarily, in response to the content and viewpoint of the booklet," told Plaintiff he was "prohibited from handing out his literature" and that he was on "private property." *Id*. ¶¶ 42, 43. Plaintiff concedes that Ritter "relent[ed]" after speaking with his police chief. *Id*. ¶ 55. Plaintiff alleges that "Ritter's actions interfered with Hershey's lawful and protected speech activities and caused Hershey to not offer his booklets to some of the passersby." *Id*. ¶ 52. Plaintiff alleges that Ritter's presence deterred students from accepting booklets. *Id*. ¶ 53.

Last, Plaintiff alleges that, on December 5, 2018, he was distributing booklets regarding vegetarianism on MU's campus. *Id.* ¶ 56. He contends that Nancy Monteer, the Director of Campus Dining ("Monteer"), "arbitrarily, in retaliation based on the content and viewpoint of the booklet," confronted Plaintiff and "yelled" at him to "get away" from the dining hall doors. *Id.* ¶ 68. Plaintiff alleges his confrontation with Monteer culminated in Plaintiff "rais[ing] his arms up to protect himself from Monteer's increasingly aggressive advances." *Id.* ¶ 78.

Under 42 U.S.C. § 1983, Plaintiff brings suit against the Board of Curators of the University of Missouri ("University"); the individual members of the Board of Curators Julia Brncic, Darryl Chatman, Maurice Graham, Jeffrey Layman, Greg Hoberock, Phillip Snowden, David Steelman, Robin Wenneker, and Michael Williams ("Curators"); University President Mun Choi; and the Chancellors and former Chancellor of other MU campuses Alexander Cartwright, Mohammed Dehghani, and Kristin Sobolik ("Chancellors") in their official capacities. Plaintiff brings § 1983 claims against Director of Campus Dining Nancy Monteer, Sergeant Mark Ritter, Director of the Millenium Student Center Dorian Hall, and Jane Doe in both their official and individual capacities. Plaintiff asserts claims under Missouri's Campus Free Expression Act ("CFEA") against all Defendants.

In Count I, Plaintiff asserts a Section 1983 and Campus Free Expression Act claim for "Violations of the First Amendment . . . and of Plaintiff's Rights Under the CFEA – Unlawful University Policies." Plaintiff claims the University system policy (referred to as 'Collected Rules and Regulations' or 'CRRs') Section 110.010 is unconstitutional and violates the CFEA (discussed in more detail below). Plaintiff claims that the policy's requirement for written permission and/or a permit constitutes a prior restraint and impermissibly grants the decision-maker unfettered discretion. *Id.* ¶ 107. Plaintiff also claims the policy is unconstitutional and violates the CFEA in

that individuals who are on University property without an appropriate purpose shall be deemed guilty of trespass. *Id.* Plaintiff further alleges the policy is improper in that it forbids soliciting subscriptions. *Id.* Plaintiff asserts that Defendants "unconstitutionally and illegally applied Section 110.010 to Hershey…by maintaining the policy and ordering University personnel to enforce it against Hershey." *Id.* ¶ 108.2. Plaintiff alleges that Monteer, Ritter, Hall, and Jane Doe directly interfered with Plaintiff's rights "by enforcing the policy against him" *Id.* ¶ 109.

In Count I, Plaintiff seeks compensatory and statutory damages, attorneys' fees pursuant to 42 U.S.C. § 1983 and the CFEA, a declaratory judgment stating that CRR 110.010 is void, and an injunction under the CFEA prohibiting Defendants from "continuing to publish and enforce" CRR 110.010.

In Count II, Plaintiff asserts a CFEA violation arising out of the 2018 MU incident. Plaintiff alleges Defendants violated the CFEA by "arresting, handcuffing, searching, and confining" Plaintiff in retaliation for his exercise of expressive activities. *Id.* ¶ 120.B. He alleges Defendants further violated the CFEA by "stating that he was banned from the University for one year." *Id.* ¶ 120.C. Count III asserts a CFEA claim arising out of the Missouri S&T incident and Count IV asserts a CFEA claim arising out of the UMSL incident. Plaintiff seeks compensatory and statutory damages, attorney's fees, a declaratory judgment, and injunctive relief for his CFEA claims.

In Count V, Plaintiff asserts a pursuant to 42 U.S.C. § 1983 and CFEA claim against Defendants arising out of the December 2021 incident at MU. Plaintiff seeks compensatory and statutory damages, attorney's fees under both theories, a declaratory judgment, and injunctive relief under the CFEA.

**STANDARD**

A complaint must contain factual allegations that, when accepted as true, are sufficient to state a claim of relief that is plausible on its face. *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (internal citations omitted).

The complaint's factual allegations must be sufficient to "raise a right to relief about the speculative level," and the motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555, 570 (2007). Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

**DISCUSSION**

As described in more detail above, Plaintiff brings claims pursuant to the CFEA and 42 U.S.C. § 1983 against Defendants under the theory that they pursuant to University policy CRR 110.010 infringed his First Amendment rights on several occasions by restricting his speech based on content.

### 1. Plaintiff has standing to bring § 1983 claims

As a threshold matter, Defendants argue that Plaintiff lacks standing to bring his § 1983 claims contained in Counts I and V. Standing is a jurisdictional prerequisite to filing suit under Section 1983. *Young America's Foundation v. Kaler*, 14 F.4th 879, 887 (8th Cir. 2021). To establish standing, Plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial

5

decision." *Id.* When challenging the constitutionality of a policy, a plaintiff "must show that its injury is fairly traceable to a challenged statutory provision, or as in this case, a university policy." *Id.* at 888. If a policy was not applied to him, Plaintiff "does not have standing to challenge [this] policy." *Id.* (also holding that a plaintiff "cannot prevail…without showing that the law has in fact been unconstitutionally applied to [him]"). However, when it comes to standing "the plaintiff may rely on 'general factual allegations of injury resulting from the defendant's conduct' at the pleading stage…" *Young America's Foundation v. Kaler*, 14 F.4th 879, 887-88 (8th Cir. 2021) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Defendants argue Plaintiff suffered no injury in fact. Plaintiff alleges that he is injured because the policy and Defendants' enforcement of it has had a chilling effect on his desire to exercise his First Amendment rights. The Supreme Court has held that constitutional violations may arise from the chilling effect of "regulations that fall short of a direct prohibition against the exercise of First Amendment rights," *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 417–18, 133 S. Ct. 1138, 1152, 185 L. Ed. 2d 264 (2013). While "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm," (*id.*), Plaintiff also alleges that at least some Defendants have acted on policy and allegedly demonstrated that the policy will likely be unlawfully applied to him in the future. This is sufficient to demonstrate an injury in fact in a First Amendment case. *Id.  See also, Henerey v. City of St. Charles*, 200 F.3d 1128 (8th Cir. 1999) (citing *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 713-20 (1931)); see also *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021) (plaintiffs had standing to pursue prior restraint claim although alleging only nominal damages). Therefore, the Court finds that Plaintiff has standing to bring his § 1983 claims.

### 2. Eleventh Amendment immunity bars claims for damages

Defendants argue extensively that they are immune from Plaintiff's § 1983 claims via the Eleventh Amendment. The Eleventh Amendment flatly "prohibits federal-court lawsuits seeking monetary damages from individual state officers in their official capacities because such lawsuits are essentially for recovery of money from the state." *Treleven v. University of Minnesota*, 73 F.3d 816, 818 (8th Cir. 1996) (cleaned up).

"There are three exceptions to Eleventh Amendment immunity: (1) where the state waives immunity by consenting to suit in federal court; (2) where Congress abrogates the state's immunity through valid exercise of its powers; and (3) under *Ex parte Young*, 209 U.S. 123 (1908), where the plaintiff files suit against state officials seeking prospective equitable relief for ongoing violations of federal law." *Swatzell v. Bd. of Regents*, No. 1:16-CV-00262-JAR, 2017 WL 3116150 at *2 (E.D. Mo. July 21, 2017) (citing *Keselyak v. Curators of the University of Missouri*, 200 F. Supp. 3d 849, 854 (W.D. Mo. 2016).

#### a. Claims against the University

The Eleventh Amendment prohibits suits in federal court by a citizen against his own state. *Hans v. Louisiana*, 134 U.S. 1 (1890). Eleventh Amendment immunity applies to all suits against state or state instrumentalities, whether in law or in equity, for damages or for any other relief. *Cory v. White*, 457 U.S. 85 (1982); *see also Monroe v. Arkansas State University*, 495 F.3d 591, 594 (8th Cir. 2007) (holding that the Eleventh Amendment bars suits against a state university "for any kind of relief, not merely money damages"). This Court has held that the University is an arm of the state and afforded the protection of the Eleventh Amendment. *See Sherman v. Curators of the University of Missouri,* 871 F. Supp. 344 (W.D. Mo. 1994) (holding that the University of

Missouri is an alter ego or instrumentality of the State). Therefore, Plaintiff's claims against the University are dismissed in their entireties pursuant to the Eleventh Amendment.

### b. Federal claims for prospective injunctive relief against defendants in their official capacities are not barred under the Eleventh Amendment

As noted above, Plaintiff cannot maintain a § 1983 action for damages against the Defendants in their official capacities due to immunity granted to Defendants under the Eleventh Amendment. Plaintiff may avoid Eleventh Amendment immunity by seeking prospective injunctive relief against individuals, but only if a sufficient connection is alleged. *Duit Construction Co. v. Bennett*, 796 F.3d 938, 940 (8th Cir. 2015). Plaintiff seeks prospective equitable relief against state officials for alleged violations of federal law in his Second Amended Complaint. Defendants are therefore not immune from suit under the Eleventh Amendment insofar as Plaintiff is seeking prospective relief rather than money damages. Whether or not Plaintiff has established a sufficient connection between each defendant and the harm alleged is also relevant to whether Plaintiff has sufficiently pled § 1983 claims against them, which is discussed below.

### c. State law claims under the CFEA

Plaintiff also brings claims against all Defendants under the CFEA, a state law. Mo. Rev. Stat. § 173.1550 provides that:

1. The provisions of this section shall be known and cited as the "Campus Free Expression Act". Expressive activities protected under the provisions of this section include, but are not limited to, all forms of peaceful assembly, protests, speeches, distribution of literature, carrying signs, and circulating petitions.
2. The outdoor areas of campuses of public institutions of higher education in this state shall be deemed traditional public forums. Public institutions of higher education may maintain and enforce reasonable time, place, and manner restrictions in service of a significant institutional interest only when such restrictions employ clear, published, content, and viewpoint-neutral criteria, and provide for ample alternative means of expression. Any such restrictions shall allow for members of the university community to spontaneously and contemporaneously assemble.
3. Any person who wishes to engage in noncommercial expressive activity on campus shall be permitted to do so freely, as long as the person's conduct is not unlawful

8

and does not materially and substantially disrupt the functioning of the institution subject to the requirements of subsection 2 of this section.

4. Nothing in this section shall be interpreted as limiting the right of student expression elsewhere on campus.

5. The following persons may bring an action in a court of competent jurisdiction to enjoin any violation of this section or to recover compensatory damages, reasonable court costs, and attorney fees:

(1) The attorney general;

(2) Persons whose expressive rights were violated through the violation of this section.

Defendants invoke the Eleventh Amendment and claim that all Defendants are entitled to immunity with respect to the CFEA claims. Defendants contend that the CFEA does not constitute a waiver of Eleventh Amendment immunity in federal courts. "[A] federal suit against state officials on the basis of state law contravenes the Eleventh Amendment." *Pennhurst State School v. Halderman,* 465 U.S. 89, 117 (1984). Even if a state has waived immunity with regard to "its own courts," this "is not a waiver of the Eleventh Amendment immunity in federal courts." *Id.* n.9.

Plaintiff argues that "Defendants are not entitled to Eleventh Immunity with respect to the CFEA claims. The CFEA includes a waiver of immunity in all courts of competent jurisdiction. § 173.1550.5, RSMo. And Plaintiff claims prospective, equitable relief, which remedy is not subject to immunity." (Doc. 72 at 8). However, Plaintiff fails to note that, with respect to his CEFA claims, he seeks prospective relief under the CEFA itself, which has no bearing on federal equitable relief and thus does not create an exception to Eleventh Amendment immunity.

The only federal court to interpret the CEFA only found that the claims would be time-barred under the statute but did not reach the Eleventh Amendment issue. *Reed v. Smart*, No. 19-03348-CV-S-BP, 2020 WL 96911, at *4 (W.D. Mo. Jan. 8, 2020).

The immunity of a state from suit is a privilege which it may waive at its pleasure. A state may expressly consent to being sued in federal court by statute. *Gunter v. Atlantic Coast Line R.R.*, 200 U.S. 273, 284 (1906). But the conclusion that there has been consent or a waiver is not lightly

inferred; the Court strictly construes statutes alleged to consent to suit. Thus, a state may waive its immunity in its own courts without consenting to suit in federal court and a general authorization "to sue and be sued" is ordinarily insufficient to constitute consent. *Smith v. Reeves*, 178 U.S. 436 (1900); *Murray v. Wilson Distilling Co*., 213 U.S. 151, 172 (1909); *Graves v. Texas Co.*, 298 U.S. 393, 403–04 (1936); *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47 (1944). "The Court will give effect to a State's waiver of Eleventh Amendment immunity 'only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.' A State does not waive its Eleventh Amendment immunity by consenting to suit only in its own courts, and '[t]hus, in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in *federal court*.'" *Port Authority Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305–06 (1990) (emphasis in original).

The CEFA does not contain "the most express language" or "overwhelming implication" that it intends to waive its immunity in federal courts. Plaintiff does not ask this Court to declare the CEFA to be unconstitutional or otherwise challenge the validity of the statute. Therefore, the Court finds that the State and its officials are immune from suit in this Court pursuant to the Eleventh Amendment. Plaintiff's claims under the CEFA in Counts I through V against all Defendants are dismissed without prejudice.

### 3. Remaining claims under § 1983

Plaintiff sues Defendants Curators, Chancellors, and President Choi in their official capacities. Plaintiff sues Defendants Monteer, Ritter, and Hall in both their official and individual capacities. As discussed above, Plaintiff's state law claims under the CFEA and claims against the University are dismissed. All claims under § 1983 against all individually named defendants in

their official capacities are only valid to the extent they seek prospective injunctive relief and any claims for money damages under § 1983 are dismissed.

### a. Plaintiff fails to state claims under § 1983 as to several defendants in their official capacities

State officials sued in their official capacity for equitable relief are persons for purposes of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). To state a claim for equitable relief under § 1983, Plaintiff must allege that defendants acted under "color of law;" and deprived him of a right, privilege, or immunity secured either by the Constitution or federal law. Plaintiff fails to sufficiently allege a *prima facie* § 1983 violation as to Defendants Curators, Chancellors, and President Choi. To prevail on a First Amendment retaliation claim, Plaintiff must establish that (1) he engaged in protected activity; (2) university officials took adverse action against him "that would chill a person of ordinary firmness from continuing in the activity;" and (3) the adverse action was motivated "at least in part by the exercise of the protected activity." *Bennie v. Munn*, 822 F.3d 392, 397 (8th Cir. 2016).

With respect to the individual Curators, Chancellors, and President Choi named in their official capacities, Plaintiff alleges that these defendants acted under the color of law and deprived him of his First Amendment rights by "maintaining and enforcing" the University policy at issue. (Doc. 65 at 24). Plaintiff does not contend that the Curators (Julia Brncic, Darryl Chatman, Maurice Graham, Jeffrey Layman, Greg Hoberock, Phillip Snowden, David Steelman, Robin Wenneker, and Michael Williams); President Mun Choi; or the Chancellors (Alexander Cartwright, Mohammed Dehghani, and Kristin Sobolik) interacted directly with him or consistently or regularly enforced CRR 110.010 against him. Though in this capacity they may have adopted or "maintained" the policy, which Plaintiff alleges at least in part caused his injury Therefore, the § 1983 claims against the Curators, Chancellors, and President Choi in their official

capacities are not dismissed with respect to prospective relief only regarding the University's policy.

Plaintiff claims to have interacted with Defendants Monteer, Ritter, and Hall directly. Defendants state that, "the individual Defendants Plaintiff claims interacted with him (Monteer, Ritter, and Hall) are not alleged to have mentioned the policy at all." (Doc. 74 at 5). However, Plaintiff plainly alleges that Defendants Monteer, Ritter, and Hall infringed his First Amendment rights pursuant to the University's policy. (See, e.g., Doc. 65 at ¶¶ 28, 37, 53, 92, 110, 116). Similarly, Plaintiff sufficiently pleads the University's intentions in this regard, including their specific intent to impose unlawful content-based and viewpoint-based restrictions on Plaintiff. (See, e.g., Doc. 65 at ¶¶ 23, 32, 43, 68, 93, 107, 109, 110, 116, 133, 140). The Second Amended Complaint pleads *prima facie* § 1983 claims against Defendants Monteer, Hall, and Ritter in their official capacities and does not warrant dismissal at this stage of litigation.

### b. Claims against remaining defendants in their individual capacities are not dismissed

Defendants Monteer, Ritter, Hall, and Doe are additionally sued in their individual capacities. Defendants argue that they are entitled to qualified immunity. "Qualified immunity protects a government official from liability in a section 1983 action unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." *Henderson v. Munn*, 439 F.3d 497, 501 (8th Cir. 2006). "To overcome the defense of qualified immunity, a plaintiff must show: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009). Although qualified immunity is a defense, "the plaintiff must establish that the law was clearly established." *Monroe*, 495 F.3d at 594.

Plaintiff's Second Amended Complaint is sufficient to overcome Defendants' asserted immunity at this stage in the litigation. Defendants do not dispute that the areas where Plaintiff alleges interference with his free speech rights, including preventing him from communicating with his target audience, harassing, accosting, arresting, and banning him, were traditional public forums. It has long been bedrock, clearly established First Amendment law that the most stringent standard is applicable to restrictions on speech in a traditional public forum, particularly at public schools, parks and streets. *Perry Educ. Ass'n v. Perry Loc. Educators' Assn*, 460 U.S. 37, 45 (1983); *Douglas v. Brownell*, 88 F.3d 1511, 1516 (8th Cir. 1996).

Here, Plaintiff specifically alleges that the Defendants imposed *content-based* exclusions that are not necessary to preserve a compelling state interest and that the restrictions are not narrowly tailored. See Second Amended Complaint (Doc. 65) at ¶¶ 43, 68, 102, 107, 110. *See Duran v. City of Douglas, Ariz.*, 904 F.2d 1372, 1378 (9th Cir. 1990) (plaintiff not required to show the officer knew "the fine points of First Amendment law."); *McDermott v. Royal*, 213 F. App'x 500, 502 (8th Cir. 2007) (applying *Duran*).

It is clearly established law that that restrictions on speech based on the content of the speech is subject to the highest scrutiny under the law. "For the State to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end.... The State may enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Perry Educ. Ass'n*, 460 U.S. at 45 (internal quotation omitted).

The clearly established law regarding content-based restrictions on speech is one which a reasonable person would have understood at the time of the Plaintiff's alleged deprivation. Plaintiff

alleges Defendants Monteer, Hall, and Ritter infringed on his rights to freedom of speech based on the vegetarian/vegan content he was communicating. Plaintiff has sufficiently pled actions by these defendants overcome their claim to qualified immunity. Accordingly, Plaintiff's § 1983 claims against the remaining defendants (Monteer, Hall, and Ritter) in their individual capacities are not dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. 69) is **GRANTED IN PART and DENIED IN PART**. All state law claims under the CFEA (in Counts I, II, II, IV, and V) are dismissed without prejudice. Accordingly, Counts II, III, and IV are dismissed in their entirety. The University (named as the Board of Curators of the University of Missouri) is dismissed as a party, and all claims against it are dismissed without prejudice.

All § 1983 claims (in Counts I and V) against individual Curators (Julia G. Brncic, Darryl M. Chatman, Maurice B. Graham, Jeffrey L. Layman, Greg E. Hoberock, Phillip H. Snowden, David L. Steelman, Robin R. Wenneker, Michael A. Williams), President Mun Choi, Chancellors (Alexander Cartwright, Mohammed Dehghanni, and Kristin Sobolik), Nancy Monteer, Mark Ritter, and Dorian Hall in their official capacities are not dismissed to the extent they seek prospective relief. Any claims for money damages against these defendants in their official capacities are dismissed. All § 1983 claims against Defendants Nancy Monteer, Mark Ritter, and Dorian Hall in their individual capacities are not dismissed.

**IT IS SO ORDERED.**

Dated: April 13, 2022

        */s/ Douglas Harpool*
        **DOUGLAS HARPOOL**
        **United States District Judge**

14